SCHILLING v. CAR LIGHTING & POWER CO. et al.

(District Court, S. D. New York. July 22, 1922.)

1. Corporations &#8780;629—In absence of statute, stockholders have vested right to share in earnings and property on dissolution.

In the absence of a statute, the stockholders are considered to have acquired a vested right to share in the earnings of the corporation and in its property on dissolution, in accordance with the contract of stock ownership.

2. Corporations &#8780;71—Maine statute held to authorize issuance of treasury stock as preferred stock.

Rev. St. Me. c. 51, § 53, authorizing corporations to create two or more kinds of stock, with such restrictions or qualifications as shall be de-

termined in the by-laws or by vote of the stockholders, which, as shown by affidavits, has been practically construed as applying to the issuance of treasury stock as preferred stock, authorizes a Maine corporation to issue common stock, which it had in its treasury after it had once been issued as preferred stock, giving each common stockholder a right to subscribe for shares of the preferred stock in proportion to his holdings of common stock.

3. **Corporations ☜198—Proxies in which stockholders wrote names only in blank at beginning are void.**

Proxies given by stockholders of a corporation, in which the names of the stockholders were written in the blank in the body of the proxies, but which were not signed at the end of the proxy, are void.

In Equity. Suit by Fred F. Schilling against the Car Lighting & Power Company and others. On plaintiff's motion for an injunction. Temporary restraining order continued until defendant company shall hold a new election.

Appeal dismissed, 289 Fed. 493.

Chadbourne, Hunt & Jaeckel, of New York City, for the motion.
Hays, Hershfield & Wolf, of New York City, opposed.

KNOX, District Judge. Car Lighting & Power Company, hereinafter called the "Car Company," is a Maine corporation, having an authorized capital stock of $8,000,000, divided into 320,000 shares, of the par value of $25 each, all such stock being of one class. About $7,000,000 of the par value of this stock is outstanding in the hands of the public, and the balance, having at some time been issued and outstanding, has found its way back into the treasury of the company, and is carried as an asset. The individual defendants are directors and officers of the Car Company, and Bankers' Trust Company is its transfer agent.

The Car Company is desirous of obtaining new money with which to finance the operation of a corporation known as the Clothel Refrigerating Company, the capital stock of which is held by the Car Company. It has undertaken to accomplish this purpose by the following means:

At an adjourned stockholders' meeting held at Augusta, Me., upon March 30, 1922, the Car Company adopted resolutions providing for the creation of "preferred stock," to carry 5 per cent. cumulative dividends, and also to be preferred as to principal upon liquidation, and to make 40,000 shares, of the par value of $25 each, held in the treasury, such preferred stock. The directors were authorized in their discretion "to dispose of such preferred stock for such consideration and in such manner as the board of directors may hereafter decide."

Thereafter, on May 26, 1922, a notice was sent to stockholders of the Car Company offering them the right to subscribe to the preferred stock so created up to 10 per cent. of their stock holdings, upon the surrender of one share of the existing stock in exchange for each share of preferred stock subscribed for, and upon the payment of $5 for each such share of preferred stock. Plaintiff, the holder of 200 shares of the Car Company's existing stock, objects to the plan pro-

posed upon two grounds: First, that the same is unlawful and invalid, under the common law and the Maine statute; and, second, that the stockholders' meeting, which attempted to authorize the plan, could not properly do so, owing to the alleged lack of a quorum.

[1] That the proposed action of the Car Company would, without the unanimous consent of its stockholders, be unlawful under the common law, may be admitted. Kent v. Quicksilver Mining Co., 78 N. Y. 159. In the absence of appropriate statutory enactment, the stockholders would be considered to have acquired a vested right to share in the earnings of the corporation and in its property on dissolution, in accordance with the contract of stock ownership. 14 Corpus Juris, p. 411.

[2] The situation in the present case is that section 53 of chapter 51 of the Maine Statutes provides:

"Every corporation may create two or more kinds of stock with such classes and with such designations, preferences and voting powers, or restrictions or qualifications thereof, as shall be fixed and determined in the by-laws, or by vote of the stockholders at a meeting duly called for the purpose."

I am not furnished with the date of the enactment of the statute but shall assume it to antedate the formation of the Car Company. The law just quoted is the basis of the Car Company's asserted right to act in the manner set out above. That the law gives any such authority is denied by plaintiff, who contends that the right to *create* different kinds of stock provides no sanction for the conversion of previously issued stock of one class, now in the company's treasury, into stock of another class.

Strange as it may seem, the statute here invoked has never been judicially construed; but, from affidavits filed herein by the secretary of state for Maine, and by several attorneys having experience with Maine corporation laws, it appears that the action here under attack is recognized as being in conformity with the law and practice of that state. It is true, as urged by plaintiff, that these affidavits do not specifically state that such is the practice as to treasury stock. I think, however, that such is their fair intendment.

The kernel of plaintiff's objection is that the preferred stock created as aforesaid will be sold for less than its par value and that thereby the purchaser of such stock will acquire an undue advantage and preference over common stockholders. Any such disadvantage, it would seem, might be overcome if, instead of offering the right to subscribe for preferred stock in the proportion of one share for 10 of the common shares, the common stockholders are given the right to purchase all the preferred stock in proportion to their holdings of the outstanding stock. Thereby the owners of the corporation may, if they wish, take advantage of their company's financial difficulties. As the matter now stands, the stock of the company has only a nominal value, and the plan proposed is apparently the only available means open to its relief. Now the statute, in my opinion, is at least open to the construction placed upon it by the Car Company. Such being the case, I do not see that I should invoke a rule which is contrary to what may

be termed the practical construction of the statute in the state of its enactment.

[3] Having reached this conclusion, there remains the question of the alleged lack of a quorum at the stockholders' meeting for consideration. The Car Company claims that at the time of the meeting there were outstanding 273,831.43 shares of its capital stock. To constitute a quorum, it was necessary that 136,915.71 shares should be represented in person or by proxy. The Car Company claims that 155,-509.68 shares of stock were duly represented by proxy. Of this number, 25,456 shares are objected to as being void, upon the ground that they are unsigned. In these proxies, the stockholder signed his name in the body of the proxy, and not at the foot thereof. While objection has been made to a large number of other proxies, if this execution of this group is held to be insufficient it is determinative of the case, inasmuch as their elimination would result in the lack of a quorum at the meeting.

The proxies sent to stockholders were in the familiar form, reciting:

"Know all men by these presents that I ———, the undersigned. * * *"

Then follows the delegation of power, concluding with these words:

"In witness whereof, I have hereunto set my hand and seal this ——— day of ———, 1922. In presence of."

The instruments are not before me, but I understand that the stockholder, instead of signing in the appropriate place wrote his name in the blank at the top of the proxy, and then mailed the same to the company.

Until the present argument in support of the validity of a proxy so signed was advanced, I had not supposed that the invalidity of such an instrument was open to doubt. I realize that the execution of instruments such as these have been liberally construed, but, as I view the case, it would be going too far to hold such defectively executed instruments to be valid. Certainly, some more formal execution than can here be found is necessary to constitute a delegation of power. The entire grant of power follows rather than precedes the signature, and I am unwilling to declare that property rights can be disturbed, if not destroyed, upon any such informal formal instruments.

For this reason, I feel that I should not disturb the outstanding order of restraint. If a new meeting of stockholders be called, and a quorum of the Car Company's stockholders are present in person or by proxy, and vote for the plan proposed for the issuance of the preferred stock, and it be provided that such preferred stock in its entirety be offered upon equitable terms to the holders of the outstanding stock, I will dissolve the injunction.

Order on notice.